OPINION OF THE COURT — ev the
Hoh. J. CHILD.
The cause is brought before us from the circuit court of Adams County as an adjourned case by reference of the presiding judge on doubts as to the law or rule of decision.
It presents an agreed case for consideration upon the following state'ment of facts: ' ,
In this case it is agreed between the parties, that the plaintiff recovered two of the negroes in the declaration mentioned, to wit, Peggy and her son Elijah, by the judgment of the Nelson circuit court of the State ofKentucky, a court of competent jurisdiction, rendered on the nineteenth day of June eighteen himdred and sixteen, against William Shadburn, who claimed under the said William Gibson; and that the latter had notice of the pendency of said suit in the said State of Kentucky, and assisted in the . defence thereof, and that the said judgment of the Nelson circuit court was affirmed, upon appeal, or writ of error in the court of appeals, which is the supreme! court of said State of Kentucky, as appears by the transcript of *237 'the record in the said case of Ann Jennings vs. William Shadburn herewith filed, and marked A, is made apart of this agreed case. It is further agreed between the parties, that the value of the said negress Peggy, at the date of the service of the writ in this case, was $500, and that the value of the said negro Elijah, at the same time, was $300, and that the value of the said negress Caroline, in the declaration mentioned at the same time, was $200, and that a reasonable.hire for all three of said slaves from the time of the detention in this state, to wit, from the 80th day of April 1821, the date of the writ, and of the service thereof, amounts to $490 up to 1st June 1825, which sum it is agreed shall be considered as the amount of damages sustained by the plaintiff by reason of the detention of the said three slaves, provided the plaintiff in the opinion of th.e court shall be entitled to recover. It is further agreed, that the slave Caroline is a child of the said Peggy, born since the verdict and judgment before stated obtained in the State of Kentucky for the said Peggy and Elijah and that the said plaintiff has done no act to release her right "to the said Caroline, further than what appears upon the said transcript of the record marked A and made part hereof, and upon what is hereafter stated in this agreed case. It is further agreed that the said William Shadburn deposited in the clerk’s office of the 'said Nelson Circuit Court the sum of $463,33 for the purpose of discharging the judgment rendered for the alternate value of the .said slaves, Peggy and Elijah, and the costs in said suit, as appears by the^deposition of James Staughton, clerk of the said Nelson Circuit Court, and the receipt thereto attached, which ■ere made parts hereof, marked B &c. that the plaintiff’s attorney was notified of this payment,- and refused to accept it, and that this was considered by the party making it, as a tender thereof. See paper D. and Charles Jennings’ deposition. — ' It is further agreed that the said Ann Jennings never obtained possession of the said slaves, Peggy and Elijah, under her verdict and judgment against William Shadburn, in the state of Kentucky, but that the said William Gibson after the recovery aforesaid, removed the said slaves, Peggy, Elijah and Caroline from the said state of Kentucky, to Natchez, in the state of Mississippi, and that no'process of any kind, issued in the said state of Kentucky, to enforce satisfaction of the aforesaid judgment there' ©blamed. It is further agreed that if upon the foregoing facts the plain* *238 t¡ff is entitled to recover tho aforesaid slaves, or any of them, that then judgment be entered for the plaintiff, for the said slaves, or the alternate value and damages before agreed for their detention, or for either of the said slaves, or the alternate value of such slave without damages, unless Peggy should be recovered. But if the Court should be of opinion upon this statement of facts that the plaintiff is not entitled to recover any of the said slaves, then judgment to be rendered for the defendant.
Thomas B. Heed and George Adams for the plaintiff.
Griffith, Quitman, andD. S. Walker for defendant.
The authorities to be Found in the English books, on the subject of tho action of detinue, are very few, both in treatises on first principles, as well as on decided cases. The wager of law to which this action was subject, as well as the defects in its final process, in the completion and perfection •of the object for which it seems to have been framed, together with the transitory nature of personal property, upon which alone it could operate!, appear among the leading causes that have thrown this action into disuse in the country where it had its origin, and to which we are to look for the principles upon which it was founded. Such and so great is the absence of authority, as regards this form of action, that even Chitty, as a book maker, an author, to whom the merit of being a copious compiler has never been denied, furnishes scarcely two octavo pages of information on the subject, presenting a mass of contradictory decisions, at oje time treating the action of detinue as arising on contract, and only sustainable where the taking was legal, and at another, covering all the ground of the action of replevin, and extending the remedy to cases where 1jie taking is tortious and illegal.
In this deficiency, and intricacy and co.nfliction of foreign law, a resort to the authorities of our own country becomes necessary, if not in search ©f books on first principles as to the peculiar nature of the action, at any rate, for the doctrine to be found in decided cases; and even here, the authorities are not very numerous, and mostly confined to the slave holding states. The citizens of these states, possessing a species of property, combining some degree of intelligence, with peculiar facilities of exercising the power of# locomotion, have frequently resorted to this form of action,, as being considered a more adequate remedy than thcaction of trover, upon, *239 the ground of its being an equitable relief, inwbich the verdict of the jury m ight impose a heavy penalty on the defendant, in finding the amount of the alternate value, and thereby compel him to deliver the specific thing, the subject matter in controversy, in discharge of the judgment, and I do not remember having read a single case where a court of law has restrained a motion for a new trial in the action of detinue, on the ground that the finding of the jury, as to the alternate value, was excessive, however oppressive, the amount might appear, when it was in the power of the defendant to exonorate and discharge himself of the burthen, by a delivery of the specific article recovered. Since it has been decided by the supreme court, that the wager of law, if it ever existed in this country, has become obsolete, or if not obsolete, is abolisned by the provisions in our constitutions, securing the right of trial by jury in all cases, this action is becoming a more frequent remedy than heretofore, and therefore it is more important that the nature and extent of the relief should be fully understood and settled. In doing this, the courts are bound to go as far as the authority of first principles and decided cases will warrant, for the purpose of making the remedy an adequate relief, commensurate with the injury sought to be redressed. If the remedy should nevertheless prove defective in practical operation, after the court have explained that which is intricate, and expunged redundancies, the radical defect can only be cured by legislative interposition; courts in this state having no power to create new remedies, or extend their application beyond the permission of law and established usage.
In looking into the record in this case, the transcript of the proceedings in the courts ofKentucky first presents itself for consideration. By the contents of this document we are informed, that the plaintiff, in an action ■of detinue, had obtained a verdict for the alternate value of the property, .sufficient in amount, perhaps, to have compelled the defendant to make restitution of the specific thing for which the action was brought. The suit was instituted for the recovery of two slaves, and on a motion for a new trial being entered by defendant, the plaintiff released a part of the alternate value assessed by the jury as to one of the slaves, upon the .ground of there having been no testimony adduced on the trial to this point. This release was a matter solely for the consideration of the par *240 ty on advice of counsel. The descriptio rei in the action of detinue for a slave, for the purpose of identifying the property, to authorise a recovery „ has always been deemed sufficient proof to justify the jury in assessing some value, and on a motion for a new trial, the excess of the amount is immaterial, provided it is in the power of the party to deliver the thing in specie. The release of the excess of the alternate value as to the other slaves, over and above the amount claimed dn the declaration, seems to have been still moro improvident, Because, in determining an objection of this kind, on a motion for a new trial, the court after verdict will always look to the general ad damna, either in the writ or declaration, to cover the whole amount, and sustain .the verdict, to enforce its final process, in pursuance of the recovery. If, then, in making their release, by way of remittitur, to obviate a new trial, the party acted with a full knowledge of her rights, with the advice of counsel, but under a mistake of law, and let go the fast hold she had upon the defendant to enforce restitution, it is very certain she cannot rely here on a court of law upon equitable principles, and it is very doubtful whether the chancellor would grant relief in such a case. It was the fault of the plaintiff that she made the release. No measure of equity is better established than this: that a transaction taintless of fraud, undisturbed by accident, and unaffected by mistake, in fact, cannot be fairly complained of, because the party misconceived the law. All the cases are of a contrary tendency: every party stands upon his own case, and his counsel’s wit. Intho case of Ruben vs. Keady, Lord Harwich, in substance says, “ if parties act with counsel, they shall be supposed to be acquainted with the consequences of law.” Courts, says Chancellor Kent,,do not undertake to relieve parlies from their acts, and deeds fairly done, on a full knowledge of facts, though under a mis, take of law and in a mistake of law, by a party acting with the advice of counsel, believing a defeasible to be an indefeasible security, Lord Thurlow would not grant relief, and the position has ever been sustained by Lord Eldon, 2. Atkins, pages 587 and 591, 2. I. Ch. C. 51. 60 11 Ves. 209, 228. 1 Bro. Ch. Cas. 91. do 219. G Ves. $18382. If there the plaintiff made a voluntary relinquishment of the alternate value, and accepted of verdict and judgment for the specific slaves, if to be had: if not, nothing, by mistake of law, on the advico of *241 counsel — their complaint on the score of equitable consideration ceases to exist. After the partial release of the alternate value was made, and the affirmance of the judgment in the court of appeals, the defendant, as appears by the testimony, made a part of the agreed case, deposited the sum of 463,93, in discharge of the residue of the alternate value damages and costs, .and removed the property beyond the jurisdiction of the .court, apd that record does not shew that any final process eyer is- ■ sued to enforce the judgment. If a distringas in detinue, where the .defendant remains perverse, obstinate and refractory, at the discretion of • the court, eventuates and results in nothing more than a fi, fa. to levy and make the alternate value out of the goods and chattels of the defendant, ■the case assumes a peculiar aspect, growing out of the voluntary and partial release of the alternate value, and tender of the residue with .costs .and damages.
In first Sellon’s practice, page 130,1 find it laid down,-that the court on -the alias distringas, will grant a rule to levy in proportion to the plaintiff’s debt, if not sufficient levied thereon, and defendant does not appear(ifnot •sufficient levied thereon) issue outa 'pluries — which the court wilFgrant it to the amount of the debt and costs. Where the levy'has been made, move to sell the issues, and apply them to the payment of debt and costs— pursuant to statute 10. Geo. 3. c. 50. This statute is in part declaratory of the common law, in part an enlarging, not a restraining statute, extend ¿ •ing the remedy by distringas and not restraining it., be this as it may, there are other considerations of great weight to be taken into view,’ in determining this branch of the inquiry. The commencement of this action shews conclusively, that the judgment in Kentucky for the specific ■slaves, if to be had, had become inoperative. Because it proves them to be beyond the jurisdiction of the court, and therefore not to be had, which according to the terms of the double.recovery, if not to be had, then the alternate value, drives the plaintiff back upon the after part of ■her verdict and judgment, where she will find that there is a voluntary release of a portion of the alternate value, and a lawful tender in satisfaction of the residue with damages and costs.
It is contended however, that a tender of the amount of judgment and deposit of the money at the disposal of the plaintiff, does not amount to *242 satisfaction, so as to prevent the running of an execution against the de ’ fendant. In a late case decided in the State of New-York, reported by Cowen; by virtue of fi. fa. the sheriff has made a levy on the property df the defendant and advertised it fbr sale. As the hour of sale approached, the defendant made a tender of the amount of the judgment and execution in Bank notes, which was refused by the officer, saying that he was instructed by the plaintiff in execution to receive nothing but specie in satisfaction of the debt. The defendant asked time to obtain the specie from Bank, which was denied. The consequence was, that property to a great value was sacrificed, and purchased in by plaintiff. On a bill filed for that purpose, the chancellor, after much consideration, aided by the members of the Bar, which elicited an unusual display of erudition, rescinded the sheriff’s sale, and decreed the plaintiff in execution to receive the original tender. An offer to satisfy in lawful currency a'fter'judgment, is therefore very different from a tender, before suit is commenced. If then the Plaintiff released a moiety or more of the alternate value,for fear of a new trial, by mistake of law; if the evidence that the specific slaves could not be had, be as conclusive as the return of an officer can make it, and that judgment has been satisfied in legal contemplation, why does she ask a second recovery for the same detention? If a party can have two recoveries for the same original cause of action, by a parity of reasoning he might have twenty four, for that is the number of these states, producing a never ending litigation, in direct violation of a sound maxim of the law. (“ Interesse respublica ut finis sit litium”) which, with the presumption of payment is the ruling principle that leads to the passage of all statutes of limitations of actions.
Had there been no satisfaction of the recovery as to the alternate value with damages and costs, I am inclined to the opinion, that an action might be sustained here on the record for that amount, as in case of other recoveries in damages which merge the original cause of action in the judgment. It is however urged by the counsel for Plaintiff, that as one of the slaves sued for'in this action is the offspring of Peggy, born since the verdict and yet in Kentucky, for whom there has been no former recovery, this action ought to be sustained pro tanto, even if it should be doubted that the plaintiff had no right to recover the mother.
*243 This, ifit did not lead to great absurdities, in departing from the rula that “ partus sequitur venlrum” would certainly have a tendency to widen the accesses to litigation. This species of property is sometimes very prolific, and it would be absurd to tie up the hands of a party, while things remained in posse, but permit him to proceed upon them in an action of detinue, the moment they were in esse, and multiply his actions as fast as the children were born, although his right to recover the parent was gone.
It is further urged upon the court, as this action is not brought upon the record, the Kentucky and Yirginia decisions do not apply.
The plaintiff in this case has satisfied the court that the specific slaves could not be had in Kentucky, otherwise they could not have been here to form the basis of a new action, and that the judgment for the alternate value, damages and costs, had been satisfied. Although an action for the alternate value, damages and costs, might have been sustained, if not satisfied, a resort to the original cause of action for the same detention, places the party in a worse situation than she would have been, had she brought her suit upon the record of former recovery, and left the defendant to shew a legal satisfaction, by plea of payment. In extending my researches to the doctrine of bail, in the action of detinue, nothing is to be found that can materially effect the case on its merits; the enlarging clause in our statute, entitling bail to an exonerator on the delivery of the specific thing, instead of the person of the defendant, a' payment of the alternate value, with damages and costs, having no application to the present question._ If called upon directly, and not collaterally, to decide the broad question determined by the court in Kentucky, and sustained by some “obiter dicta” of judge Tucker of Yirginia, I am not prepared to say that, in doctrine and law, I could dissent, when borne down by such a weight of authority. But I am rather inclined to think as they did, even in a case where there had been no satisfaction of the alternate value, damages and costs. “A fortiori,” the plaintiff here ought not to be entitled to a second recovery, when it is evident the judgment had been satisfied. The true distinction between things personal and things real is, perhaps, better defined by the civil code of Louisiana, than at common law: the terms moveables and immovables being more definite than personal and real property. In that *244 state they have annexed a clause of sequestration to the original process, in a suit for the recovery of moveables, which enables the court, on a proper shewing by affidavit, to seize at once, in limine, upon the matter in litigation, and hold it subject to abide the final determination, with power to award immediate restitution, in case of recovery, as 'well as a fi. fa. for damages and costs. In the state of South Carolina, where the action’ of trespass to try title has superseded the action of ejectment, in case of a recovery, the final process is two-fold, a writ of “ Hab. fac pos.” for the' term, anda “ fi. fa.” for the mesne profits. The perishable and moveable nature of personal property, however, is such as to preclude the idea-' of effecting restitution in specie, in all cases, because, with the immovea-bles, (land, for instance,) it is not always forthcoming, to be the subject of delivery. In the former case, however, the sequestration bond is the strongest security known to the law, for the purpose of enforcing obedience to its final process. These suggestions, however, are respectfully intimated, with a view to the legislative enactment that requires this court to give its opinions in writing. It is fair to presume the object of the Legislature in passing this law, must have been two-fold. For the information of ministerial officers, and the public at large, that the whole community might be informed as to the rule of decision in this court, and the reasons for adopting it, and second, to establish a mutual and cordial co-operation between the co-ordinate branches of the government, for the laudable purpose of improving the jurisprudence of the state. Upon the best consideration I have been able to bestow upon this case, as it stands agreed, I am clearly of opinion that judgment be entered for the defendant, upon the verdict of the jury,' on the first trial.